# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **ERIK E. GUERRERO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **NO. 1:14-cv-00151** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **MICHAEL DONAHUE, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

The Petitioner, Erik Guerrero, is an inmate at the Hardeman County Correctional Facility in Whiteville, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against Michael Donahue, Warden of the prison, seeking a writ of habeas corpus.

## I. Background

On the evening of April 12, 2008, a birthday party was being held at the National Guard Armory in Columbia, Tennessee.[1] More than two hundred guests attended the party. (Doc. No. 16 at 4). During the course of the evening, a fight broke out between individuals from rival gangs. (*Id.*) Robert Guerrero, the Petitioner's cousin, was pushed by a rival gang member. (*Id.*) This led Robert Guerrero and a friend, Javoris Sparkman, to become involved in the altercation. (*Id.*) The police were called to the scene and officers dispersed the crowd. Police escorted the Petitioner's cousin and Sparkman out of the Armory. (*Id.*)

In the parking lot, Robert Guerrero and Sparkman met up with the Petitioner and a friend,

---

[1] The party is known as a "Quinceanera" which is the celebration of a girl's fifteenth birthday and marks her passage from childhood to womanhood (Doc. No. 16 at 4). The celebration has its cultural roots in the Hispanic community.

Charles Kelley. (*Id.*) These four individuals left in a Pontiac Grand Am. Shortly afterward, they saw a Ford Expedition on the road ahead of them carrying eleven men, women and children. (*Id.* at 5.)

Someone in the Pontiac thought that the people in the Ford Expedition were involved in the altercation earlier that evening. The Pontiac began following the Ford Expedition with its lights out. (Doc. No. 23-7 at 146.) As the Pontiac passed the Ford Expedition, passengers in the Pontiac fired shots into the Ford Expedition. (*Id.*)

The driver of the Ford Expedition slammed the car into the side of the Pontiac. (Doc. No. 23-8 at 27) ("I was trying to run them off the road.") The Pontiac left the road and ended up in a ditch. The Ford Expedition drove to a hospital in Williamson County and hospital staff determined that four of the eleven passengers had been hit by gunfire. (*Id.*) Two of the wounded passengers died from their wounds.

The police, responding to a call that shots had been fired, happened upon the Pontiac in the ditch. (Doc. No. 23-5 at 125.) The Petitioner and his cousin were the only people found with the car. (*Id.* at 127.) The other two passengers (Sparkman and Kelley) had fled the scene. When the police ascertained that the Petitioner and his cousin had not been shot, they began to investigate the incident as an aggravated assault/traffic accident. (*Id.* at 130.)

While questioning the driver, Robert Guerrero, an officer noticed the Petitioner walking off into the ditch. (*Id.* at 131.) The officer told the Petitioner to come out of the ditch. The officer then went into the ditch and found an assault rifle lying on the ground. (*Id.*) The Petitioner and his cousin were then placed under arrest and taken to the police station.

The Petitioner was charged with two counts of first degree murder, two counts of first degree felony murder and nine counts of attempted first degree murder. (Doc. No. 23-1 at 4-10.) On

February 20, 2009, a jury in Maury County found the Petitioner guilty of all charges. (*Id.* at 110-134.)[2] By operation of law, the felony murder convictions were merged with the first degree premeditated murder convictions. (Doc. No. 23-11 at 87, 89.) The Petitioner received an effective sentence of life imprisonment. (*Id.* at 82-85.)[3]

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. (Doc. No. 23- 17.) The Tennessee Supreme Court later denied the Petitioner's application for further review. (Doc. No. 23-19.)

In June 2012, the Petitioner filed a *pro se* petition for state post-conviction relief in the Criminal Court of Maury County. (Doc. No. 23-20 at 3-29.) Following the appointment of counsel, an amendment of the petition and an evidentiary hearing, the trial court denied the Petitioner post-conviction relief. (*Id.* at 48-50.)

On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. (Doc. No. 23-26.) The Tennessee Supreme Court then denied the Petitioner's request for additional post-conviction review. (Doc. No. 23-28.)

## II. Procedural History

On November 19, 2014, the Petitioner initiated this action with the *pro se* filing of a Petition (Doc. No. 1) for writ of habeas corpus. The Petition consists of the following ten claims :

> 1) trial counsel was ineffective for failing to request a jury instruction "as to the natural and probable consequences

---

[2] The Petitioner was granted a change of venue. Jury selection took place in Wayne County, after which the jurors were transported to Maury County where they remained sequestered during the trial. (Doc. No. 23-1 at 46.)

[3] Against the advice of counsel, Petitioner rejected a plea offer that would require him to plead guilty to facilitation of first degree murder in exchange for a twenty (20) year sentence at 30%. (Doc. No. 23-22 at 2-3.)

rule" (*id.* at 8-9)[4];

2)      trial and appellate counsel were ineffective for failing
"to preserve for appeal the issue that the trial court erred
in failing to instruct the jury as to the natural and probable
consequences rule as to criminal responsibility" (*id.* at 10-11)[5];

3)      the evidence was insufficient to support the convictions
(*id.* at 12-15);

4)      trial counsel was ineffective for advising the Petitioner
not to testify (*id.* at 16-18);

5)      the trial court erred by allowing evidence of the Petitioner's
gang affiliation (*id.* at 18-19);

6)      the trial court erred by failing to instruct the jury as to
the natural and probable consequences rule as it applies
to criminal responsibility (*id.* at 20);

7)      trial counsel was ineffective for neglecting to interview
and call as witnesses the Petitioner's co-defendants
(*id.* at 20-21);

8)      trial counsel was ineffective for failing to file a motion
to suppress Petitioner's statement to the police regarding
gunshot residue and other post-Miranda statements
(*id.* at 21-22);

9)      trial counsel was ineffective for failing to object to
statements made by the prosecutor during closing argument
(*id.* at 22); and

10)      trial counsel was ineffective for failing to challenge the
petit jury selection procedures (*id.* at 23).

---

[4] At trial and on direct appeal, the Petitioner was represented by J. Russell Parkes, a member of the Maury County Bar.

[5] The natural and probable consequences rule states that a defendant is criminally responsible not only for the intended, or target crime, but also for those collateral crimes committed by a co-participant in the criminal episode that are the natural and probable consequences of the target crime. Tennessee v. Richmond, 90 S.W.3d 648, 654 (Tenn. 2002).

Counsel was appointed to represent the Petitioner and was invited to file an amended Petition if necessary. (Doc. No. 10.) An amended Petition (Doc. No. 16) was filed that incorporates all those claims raised in the original Petition (*id.* at 24) and includes the following nine new claims :

11) the trial court's jury instructions violated Petitioner's right to due process. More specifically, the Petitioner questions the "reasonable doubt" instruction (at 15-16), the instruction as it relates to criminal responsibility (at 16-18), the "intent" instruction (at 18) and the instruction for felony murder (*id.* at 18-19);

12) trial counsel was ineffective for failing to object to these jury instructions (*id.* at 19-20);

13) trial counsel was ineffective for not calling Jason Fletcher as a witness (*id.* at 20-21)[6];

14) trial counsel was ineffective because he did not request an instruction on circumstantial evidence, i.e., requiring the jury to exclude all other reasonable hypotheses except Petitioner's guilt (*id.* at 21);

15) appellate counsel was ineffective for not raising on appeal the trial court's error in failing to instruct the jury on circumstantial evidence (*id.* at 21);

16) trial counsel was ineffective for failing to object to the composition of the grand jury and the selection of the grand jury foreperson (*id.* at 21);

17) trial counsel and appellate counsel were ineffective for failing to present at trial or on direct appeal any claim contained in the original and amended Petitions (*id.* at 21-22)[7];

18) the prosecution withheld material exculpatory evidence in violation of <u>Brady</u>, *e.g.*, counsel reasonably believes that

---

[6] Jason Fletcher was friends with co-defendant Charles Kelley. He testified as a prosecution witness at Kelley's trial. (Doc. No. 16 at 4.)

[7] The appellate counsel referred to in this claim is Petitioner's counsel during his direct, and not his post-conviction, appeal. (Doc. No. 16 at 21.)

the prosecution withheld exculpatory statements from Jason Fletcher (*id.* at 22); and

19) the selection of the grand jury and the grand jury foreperson was unconstitutional (*id.* at 22-24).


Presently before the Court is respondent's Answer (Doc. No. 24), to which the Petitioner has offered no reply. Having carefully considered the Petition, as amended, respondent's Answer and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (holding that a district court is not required to hold an evidentiary hearing if the record refutes the applicant's factual allegations or otherwise precludes habeas relief). Therefore, the Court shall dispose of the Petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) State Law Claims**

Federal habeas corpus relief is only available to cure "a violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim that is based upon a perceived error or misapplication of state law will not normally be recognized as an actionable claim for federal habeas corpus relief. Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

In this regard, the Petitioner alleges that the trial court erred when it allowed evidence of the Petitioner's gang affiliation. (Claim No. 5.) The Petitioner argued this question at the state court level by asserting that the evidence was "irrelevant and was overly prejudicial" and, as such, was allowed in violation of the Tennessee Rules of Evidence. (Doc. No. 23-15 at 21.) The state courts treated this issue as a question of state evidentiary rules. (Doc. No. 23-17 at 9.) Moreover, in his

federal habeas Petition, the Petitioner argues only that evidence of his gang affiliation "was not relevant and was overly prejudicial." (Doc. No. 1 at 19.) This claim has, at every level of review, been presented as a misapplication of state rather than federal law.

The Petitioner also claims that the trial court erred by failing to instruct the jury as to the "natural and probable consequences rule." (Claim No. 6.) This rule is a creation of state law. *See* Richmond, *supra*. The claim was argued in the state courts as a violation of state law. (Doc. No. 23-15 at 31-32.)[8] The Petitioner offers no authority, nor is the Court aware of any authority, that recognizes that this alleged error constitutes a violation of federal law. (Doc. No. 1 at 20.)

It appears, therefore, that the Petitioner's fifth and sixth claims are not actionable because they allege nothing more than a misapplication of state rather than federal law. Under such circumstances, federal habeas review of these trial errors is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See* Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Giles v. Schotten, 449 F.3d 698, 704 (6th Cir. 2006) (Petitioner must show that the evidentiary ruling "was so egregious that it resulted in a denial of fundamental fairness"). The record in this case does not suggest that these alleged errors so infected the trial as to deny the Petitioner fundamental fairness. Therefore, these claims do not provide the Petitioner with a basis for relief.

**B.) Procedurally Defaulted Claims**

A federal district court will not entertain a Petition for writ of habeas corpus unless the Petitioner has first exhausted all available state court remedies for each claim in his Petition. 28 U.S.C. §§ 2254(a) and (b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly

---

[8] On direct appeal, the Tennessee Court of Criminal Appeals determined that the Petitioner waived this claim by failing to raise it in his motion for a new trial. (Doc. No. 23-17 at 13.)

enforced doctrine that promotes comity between states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the Petitioner is required to fairly present his claims to every available level of the state court system. Rose v. Lundy, 455 U.S. 509, 518-20 (1982); Lyons v. Stovall, 188 F.3d 327, 331 (6th Cir.1999). The Petitioner must offer the state court both the factual and legal bases for his claims. McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000). In other words, the Petitioner must present "the same claim under the same theory" to the state courts. Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir. 1987). It is not enough that all the facts necessary to support a federal claim were before the court or that the Petitioner made a somewhat similar state law claim. Anderson v. Harless, 459 U.S. 4, 6 (1982). Once Petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990).[9]

The Petitioner alleges that the trial court gave jury instructions that violated his right to due process (Claim No. 11), that the prosecution withheld exculpatory evidence in the form of Jason Fletcher's statement (Claim No. 18) and that the selection of the grand jury and grand jury foreperson was unconstitutional (Claim No. 19).

These claims were not raised in Petitioner's direct appeal. (Doc. No. 23-15.) Nor were they presented for consideration in his post-conviction appeal. (Doc. No. 23-24.) The Petitioner, therefore, has not yet fully exhausted his state court remedies for these claims.

---

[9] In Tennessee, a Petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also* Adams v. Holland, 330 F.3d 398, 402-04 (6th Cir. 2003).

At this late date, the Petitioner is no longer able to raise these issues as federal claims in state court. *See* Tenn. Code Ann. § 40-30-102(a) (post-conviction petition must be filed "within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date on which the judgment became final") and © ("this part contemplates the filing of only one petition for post-conviction relief"). Therefore, by way of procedural default, the Petitioner has technically met the exhaustion requirement with respect to these claims because there are no state court remedies for these claims currently available to him. Castille v. Peoples, 489 U.S. 346, 351 (1989) (the requirement of exhaustion is satisfied if it is clear that petitioner's claims are now procedurally barred under state law).

The exhaustion of a claim through procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner cannot rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he or she must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected

with constitutional error. <u>United States v. Frady</u>, 456 U.S. 152, 170-72 (1982).

The Petitioner has offered no explanation as to why these issues were not exhausted in the state courts. Nor has he shown any prejudice sufficient to excuse the procedural default of these claims. Accordingly, the Petitioner's eleventh, eighteenth and nineteenth claims also fail to provide him with a basis for relief.

The Petitioner's fifteenth claim asserts that counsel was ineffective for neglecting to raise on appeal the trial court's failure to give a jury instruction regarding circumstantial evidence. This claim was not raised in the state courts on direct appeal, (Doc. No. 23-15), or during post-conviction proceedings. (Doc. No. 23-24.) Thus, the Petitioner has not fully exhausted the state court remedies for this claim and there are not any state court remedies available. The Petitioner, therefore, has procedurally defaulted the state court remedies for the claim. In the absence of any showing of cause and prejudice, this claim does not provide the Petitioner with a basis for relief.

The Petitioner asserts nine additional claims of ineffective assistance of trial counsel that were either not presented to the state courts, (Claim Nos. 12, 13, 14, 16 and 17), or were raised in his post-conviction petition (Doc. No. 23-20) but were never pursued on appeal (Claim Nos. 2, 7, 9 and 10). These claims have not been fully exhausted in the state courts. Because state court remedies are no longer available for these claims, these claims are subject to a procedural default analysis.

In the amended Petition, the Petitioner asks the Court to "Order an evidentiary hearing, including under <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012)." (Doc. No. 16 at 24.) The reference to <u>Martinez</u> suggests that the Petitioner is asserting cause for the procedural default of these claims in the state courts. More specifically, when post-conviction counsel has been ineffective for failing to

raise certain claims, that failure can be used to establish cause in a procedural default analysis. Martinez v. Ryan, 566 U.S. 1, 9 (2012) (inadequate assistance of counsel at initial review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial).

Yet, the failure of counsel "to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir. 2004); see also Jones v. Barnes, 463 U.S. 745, 754 (1983) (counsel has no constitutional duty to raise every non-frivolous issue requested by the petitioner). Here, the Petitioner has made no argument under Martinez to show cause for the procedural default of these claims. Nor has he identified any prejudice. The Petitioner has not suggested that there is a reasonable probability that inclusion of these issues (Claim Nos. 2, 7, 9, 10, 12, 13, 14, 16 and 17) would have changed the result of his post-conviction proceedings.

Even in the absence of cause and prejudice, a procedurally defaulted claim can be reviewed if the failure to do so would result in a fundamental miscarriage of justice, Coleman v. Thompson, 501 U.S. 722, 750 (1991), i.e., the conviction of one who is actually innocent. Gibbs v. United States, 655 F.3d 473, 477 (6th Cir. 2011). While the Petitioner does claim that the evidence was not sufficient to support his convictions (Claim No. 3), that is not the same as an assertion of actual innocence. Schlup v. Delo, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Here, there is not any new evidence supporting a claim of actual innocence. Thus, the Petitioner has failed to demonstrate that the procedural default of several of his claims (Claim Nos.

2, 7, 9-19) should be excused. <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989) (denial of a claim is appropriate when the federal claim was not raised in the state appellate court for review).

## C.) Fully Exhausted Claims

The remaining claims were fully exhausted and found to be without merit - the sufficiency of the evidence claim (Claim No. 3) on direct appeal (Doc. No. 23-17) and the ineffective assistance of trial counsel claims (Claim Nos. 1, 4 and 8) during post-conviction proceedings (Doc. No. 23-26).

The availability of federal habeas corpus relief is limited with regard to claims that have been previously adjudicated on the merits in state court. <u>Harrington v. Richter</u>, 562 U.S. 86, 92 (2011). When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision (1) that was contrary to clearly established federal law; (2) that unreasonably applied clearly established federal law; or (3) that involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); <u>Harris v. Stovall</u>, 212 F.3d 940, 942 (6th Cir. 2000).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion different from that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). To grant the writ for an "unreasonable application" of federal law, the Petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. *Id.* at 413. In short, the Petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

## Sufficiency of the Evidence

The Petitioner's third claim challenges the sufficiency of the evidence to support his convictions. The right to due process guaranteed by the Constitution ensures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.* at 319.

It is the responsibility of the jury, not the court, to decide what conclusions should be drawn from evidence admitted at trial. Cavazos v. Smith, 565 U.S. 1, 2 (2011). For that reason, within the context of a sufficiency of the evidence claim, a court need only answer "whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012).

There was no direct evidence presented at trial to show that the Petitioner had a weapon or fired at the victims. Given this, the Petitioner argues that the evidence was not sufficient to support his convictions.

The Petitioner was prosecuted under a theory of criminal responsibility. (Doc. No. 1 at 12.) Criminal responsibility requires the jury to find beyond a reasonable doubt that the Petitioner acted with the intent to promote or assist the commission of the offense and directed or aided another person in the commission of the offense. Tenn. Code Ann. § 39-11-402(2). The prosecution sought

to show criminal responsibility by arguing to the jury that the Petitioner acted as a lookout while two other passengers shot into the victims' car. (Doc. No. 23-5 at 65.)

The Petitioner told officers that the fight at the National Guard Armory was gang related. (Doc. No. 23-6 at 146-47.) Petitioner's cousin, Robert, felt that he had been "disrespected" by a rival gang member. (*Id.*) The Petitioner and his cousin were members of the same gang.[10] (*Id.*)

When the occupants of the Pontiac saw what appeared to be a Ford Expedition carrying rival gang members, Robert drove the car up beside the Expedition. Co-defendants Javoris Sparkman and Charles Kelley opened fire with an assault rifle and a pistol. (Doc. No. 23-13 at 52.) At least nine shots were fired into the victims' vehicle. (Doc. No. 23-7 at 93.) Petitioner told the police that "he looked back and saw another vehicle behind them and told them so. Erik stated he told them about the car behind them so they wouldn't shoot with a witness vehicle around." (Doc. No. 23-6 at 148-49.)

The driver of the Ford Expedition forced the Pontiac into a ditch before he drove to a hospital. Everyone but Robert fled the scene. Petitioner, though, returned to the car to retrieve the assault rifle "and hide it." (Doc. No. 23-13 at 50.) The Petitioner lied to officers as to how the vehicle ended up in the ditch and denied any involvement in a shooting. (Doc. No. 23-5 at 70.) Before police arrived on the scene, Petitioner wiped some gunpowder residue off the seat of the car. (Doc. No. 23-7 at 64.) The Petitioner later asked an officer "how long ago did you have to fire a weapon in order for the gunshot residue to stay on your hands?" (Doc. No. 23-5 at 132.)

An officer recovered the assault rifle used in the shooting in the ditch were the Petitioner was

---

[10] The Petitioner identified the gang as the Insane Vikings. (Doc. No. 23-6 at 146-47.)

seen walking. (Doc. No. 23-5 at 145.)[11] He told an officer "that if the people in the Excursion [*sic*] were honest, innocent victims, that he did feel very sorry for what happened and to their families ... however, that if the people were affiliated with the gang world, that he felt no remorse for any of them because that is the life that they chose to lead." He continued "that he should not be felt sorry for, because just like them, this is the life that he chose to live. And the fact that he is involved is just a product of that life." (Doc. No. 23-6 at 72.)

From this evidence, it is clear that a juror could find beyond a reasonable doubt that the Petitioner intended to seek retribution from rival gang members and that he acted as a lookout and attempted to dispose of evidence in furtherance of the shooting that killed two individuals. For that reason, the Court concludes that the state courts did not offend federal law by finding that the evidence was sufficient to sustain Petitioner's convictions.

### Ineffective Assistance of Counsel

Petitioner's final claims are that trial counsel was ineffective for failing to request a jury instruction as to the "natural and probable consequences rule" (Claim No. 1), for advising the Petitioner not to testify (Claim No. 4) and for failing to file a motion to suppress his statement regarding gunshot residue and other post-Miranda statements (Claim No. 8).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. <u>Missouri v. Frye</u>, 566 U.S. 133, 138 (2012). To establish a violation, the Petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. <u>Strickland v. Washington</u>,

---

[11] Guerrero's petition for state post-conviction relief stated that "petitioner wanted to help Robert destroy incriminating evidence and to get the car out of the ditch." (Doc. No. 23-20 at 23.)

466 U.S. 668, 687 (1984). A deficiency occurs when counsel acts in a way that falls below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. Prejudice arises when there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694.

Where the issue is one of ineffective assistance of counsel, review under the Anti-Terrorism and Effective Death Penalty Act is "doubly deferential," Cullen v. Pinholster, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 at 690.

The Petitioner asserts that counsel was ineffective for failing to request a jury instruction "as to the natural and probable consequences rule." In its opinion affirming the denial of post-conviction relief, the Tennessee Court of Criminal Appeals described the natural and probable consequences rule "as a common law component of criminal responsibility and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime." (Doc. No. 23-26 at 14.)

According to Tennessee law, the natural and probable consequences rule does not apply to a charge of felony murder. *See* State v. Winters, 137 S.W.3d 641 (Tenn. Crim. App. 2003). Thus, the Petitioner was not entitled to such an instruction in relation to the felony murder charges. The rule, however, did apply to the charges of first degree premeditated murder.

At the post-conviction evidentiary hearing, counsel testified that, in his opinion, the jury should have been instructed as to the natural and probable consequences rule. (Doc. No. 23-21 at 86.) An instruction for the rule appeared in a pre-trial draft of the jury instructions given to counsel. For some unknown reason, though, the rule was omitted from the final premeditated murder jury

instructions. (*Id.* at 85-86.) Counsel did not notice the omission at the time. Hence, there was no contemporaneous objection, though the rule was included in the instructions for the lesser included offense of criminally negligent homicide. (*Id.* at 87.)

The state appellate court determined that counsel "was not ineffective for failing to request an instruction that he thought was going to be given." (Doc. No. 23-26 at 15.) The trial court erred by failing to instruct the jury on the natural and probable consequences rule as it related to the first degree premeditated murder charges. (*Id.*) Nevertheless, the error was harmless because the Petitioner "was not prejudiced by the failure to give the instruction in that his convictions for first degree premeditated murder merged into his convictions for first degree felony murder." (*Id.*)

While it can be argued that counsel was deficient for failing to request a jury instruction that he thought was going to be given, the state courts properly concluded that there has been no showing of prejudice sufficient to support this particular ineffective assistance claim. The premeditated murder convictions were merged with the felony murder convictions that did not require such an instruction. Moreover, the jury was instructed as to the rule, albeit as it applied to a lesser included offense. The state court ruling on this issue is not contrary to federal law. Therefore, the Court concludes that this claim does not warrant habeas corpus relief.

Counsel recommended to the Petitioner that he not testify at trial. (Doc. No. 23-21 at 19.) The Petitioner took this advice and did not testify. He now claims that counsel was ineffective for failing to fully explain to him the ramifications of not taking the witness stand.

Counsel said that he informed the Petitioner that juries liked to hear from a defendant. (*Id.* at 64.) He prepared the Petitioner to testify by running him through mock cross examinations. (*Id.* at 10.) The Petitioner admitted that counsel told him that the decision to testify was entirely his. (*Id.*)

A hearing was held to determine whether Petitioner's decision not to testify was a fully informed one. (Doc. No. 23-9.) At this hearing, the Petitioner acknowledged that he had a right to testify if he chose to do so (*id.* at 12-13), that he had discussed the possibility of testifying with counsel on several occasions (*id.* at 14-15), and that Petitioner had not been threatened or coerced in any way by counsel (*id.* at 15). Counsel was well aware as to what the Petitioner would say when he recommended that Petitioner not testify. (*Id.* at 14.)

Under these circumstances, the state courts did not misapply federal law in finding that counsel was not ineffective for recommending that Petitioner waive his right to testify. (Doc. No. 23-26 at 16.) While the Petitioner now sees that as a lost opportunity to explain to the jury why things were said and done, counsel was not deficient for recognizing that a vigorous cross examination of the Petitioner about his statements to the police could have a devastating effect on the defense. <u>Strickland</u>, 466 U.S. at 689 (every effort must be made to eliminate the distorting effects of hindsight). Consequently, the state courts did not offend federal law by finding no merit in this claim.

Finally, the Petitioner claims that counsel was ineffective for failing to challenge the admissibility of statements he made to the police. Petitioner specifically argues that statements he made to the police after receiving his Miranda warnings were subject to suppression because he gave the police an incriminating statement before receiving his Miranda warnings. *See* <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004) (Miranda warnings given mid-interrogation, after defendant gave an unwarned confession, were ineffective, and thus a confession repeated after warnings were given was inadmissible at trial).

In order to succeed on this claim, the Petitioner must show both that, had a motion to

suppress been filed, there was a reasonable probability that the Petitioner's statements would have been suppressed and the outcome of the trial would have been different had the statements been suppressed. <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).

When the police arrived on the scene, they asked the Petitioner and his cousin how they ended up in a ditch. (Doc. No. 23-5 at 127.) The Petitioner told police that a red truck ran them off the road. Later, when the assault rifle was recovered from the ditch, police arrested the Petitioner and his cousin, handcuffed them and read them their Miranda rights. (*Id.* at 131.)

The police later found out that the Petitioner lied about the red truck. Because this statement was made before the Petitioner had been Mirandized, the trial court suppressed the statement. (Doc. No. 23-1 at 49.) The Petitioner, however, made other incriminating statements to the police after he had been informed of his Miranda rights.

While sitting in a police cruiser at the scene, the Petitioner asked an officer "how long ago did you have to fire a weapon in order for the GSR to stay on your hands?"[12] (Doc. No. 23-5 at 132.) This is the lone statement specifically identified by the Petitioner as one made post-warnings that should have been suppressed by the trial court. (Doc. No. 1 at 21-22.) Counsel did in fact file a motion to suppress this statement. (Doc. No. 23-1 at 36-37.) Counsel also filed motions to suppress Petitioner's statement that he had "every intention of returning to the scene to get the gun and dispose of it", (*id.* at 57-58), and his statement as it relates to him being in a gang is the life he chose to live (*id.* at 59-60).

The Petitioner made other statements to the police. (Doc. No. 23-6 at 72; Doc. No. 23-13 at 47, 49-50, 52.) He does not allege that these statements were made before he was informed of his

---

[12] GSR is short for gunshot residue.

Miranda rights. The post-warning statements had nothing to do with the statement that Petitioner made before he was informed of his rights. All of the statements made by the Petitioner that were used at trial were made after he had been advised of his right to remain silent. The Petitioner has made no showing that the Miranda warnings he received were ineffective in any way. Therefore, at the very least, the Petitioner has failed to show that, had a motion to suppress been filed, the statements in question would have been suppressed by the court. As a consequence, the state courts were correct in finding that the Petitioner was not denied the effective assistance of counsel in this regard.

## IV. CONCLUSION

The Petitioner's claims that were predicated on a violation of state law (Claim Nos. 5 and 6) are not cognizable. Most of his ineffective assistance claims (Claim Nos. 2, 7, 9-19) fail because the procedural default of their state court remedies is unexcused.

The state courts determined that the Petitioner's fully exhausted claims, i.e., the insufficiency of the evidence claim (Claim No. 3) and the ineffectiveness of counsel claims (Claim Nos. 1, 4 and 8), lacked merit. The record supports this finding. The Petitioner has failed to rebut the presumption of correctness accorded to the findings of fact made by the state courts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has he shown in what way the legal conclusions made by the state courts with respect to his exhausted claims are either contrary to or an unreasonable application of federal law. Accordingly, this action will be dismissed.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE