**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **ERIK E. GUERRERO** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:14-cv-00151** |
| | ) | **Judge Campbell/Frensley** |
| **MICHAEL DONAHUE** | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, Erik E. Guerrero, an inmate incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee, has filed a "Motion to Alter or Amend Judgment and Grant *Martinez* Hearing" pursuant to Rule 59 of the Federal Rules of Civil Procedure. Docket No. 36. This matter was referred to the Magistrate Judge for further proceedings under Rule 8(b) of the Rules Governing Section 2254 Cases and 28 U.S.C. § 636(b)(1)(B). Docket No. 45. Respondent has filed a response, arguing that Petitioner is not entitled to relief under Rule 59. Docket No. 37. Petitioner has filed a reply. Docket No. 38.

The court held an evidentiary hearing on February 27, 2018 and ordered the filing of post hearing briefs by the Parties. Docket No. 57. After receiving several extensions, Petitioner filed his post hearing brief (Docket No. 70); Respondent filed a post hearing brief (Docket No. 78); and on February 14, 2019 Petitioner filed a reply brief (Docket No. 83). The matter is now ripe for consideration. For the reasons set forth below, the undersigned recommends that Petitioner's Rule 59(e) motion be GRANTED. Because the issues raised have been fully briefed and no additional proceedings are necessary, the undersigned further recommends that Petitioner's request for *habeas corpus* relief be DENIED.

# I.     BACKGROUND

On May 31, 2017, this court entered an Order denying Petitioner's amended petition for federal habeas relief. Docket No. 34. That Order was accompanied by a Memorandum (Docket No. 33), which recounted the factual background and procedural history of this matter, stemming from Petitioner's conviction in Tennessee state court of two counts of first-degree murder, two counts of first-degree felony murder, and nine counts of attempted first-degree murder as follows:

> On the evening of April 12, 2008, a birthday party was being held at the National Guard Armory in Columbia, Tennessee.[1]  More than two hundred guests attended the party. (Doc. No. 16 at  4). During the course of the evening, a fight broke out between individuals from rival gangs. (*Id.*) Robert Guerrero, the Petitioner's cousin, was pushed by a rival gang member. (*Id.*) This led Robert Guerrero and a friend, Javoris Sparkman, to become involved in the altercation. (*Id.*) The police were called to the scene and officers dispersed the crowd. Police escorted the Petitioner's cousin and Sparkman out of the Armory. (*Id.*)
>
> In the parking lot, Robert Guerrero and Sparkman met up with the Petitioner and a friend, Charles Kelley. (*Id.*) These four individuals left in a Pontiac Grand Am. Shortly afterward, they saw a Ford Expedition on the road ahead of them carrying eleven men, women and children. (*Id.* at 5.)
>
> Someone in the Pontiac thought that the people in the Ford Expedition were involved in the altercation earlier that evening. The Pontiac began following the Ford Expedition with its lights out. (Doc. No. 23-7 at 146.) As the Pontiac passed the Ford Expedition, passengers in the Pontiac fired shots into the Ford Expedition. (*Id.*)
>
> The driver of the Ford Expedition slammed the car into the side of the Pontiac. (Doc. No. 23-8 at 27) ("I was trying to run them off the road.") The Pontiac left the road and ended up in a ditch. The Ford Expedition drove to a hospital in Williamson County and hospital staff determined that four of the eleven passengers had been hit by gunfire. (*Id.*) Two of the wounded passengers died from their wounds.
>
> The police, responding to a call that shots had been fired, happened upon the Pontiac in the ditch. (Doc. No. 23-5 at 125.) The Petitioner and his cousin were the only people found with the car. (*Id.* at 127.) The other two passengers

---

[1] The party is known as a "Quinceanera" which is the celebration of a girl's fifteenth birthday and marks her passage from childhood to womanhood (Doc. No. 16 at 4). The celebration has its cultural roots in the Hispanic community.

(Sparkman and Kelley) had fled the scene. When the police ascertained that the Petitioner and his cousin had not been shot, they began to investigate the incident as an aggravated assault/traffic accident. (*Id.* at 130.)

While questioning the driver, Robert Guerrero, an officer noticed the Petitioner walking off into the ditch. (*Id.* at 131.) The officer told the Petitioner to come out of the ditch. The officer then went into the ditch and found an assault rifle lying on the ground. (*Id.*) The Petitioner and his cousin were then placed under arrest and taken to the police station.

The Petitioner was charged with two counts of first-degree murder, two counts of first-degree felony murder and nine counts of attempted first degree murder. (Doc. No. 23-1 at 4-10.) On 2009, a jury in Maury County found the Petitioner guilty of all charges. (*Id.* at 110-134.)[2] By operation of law, the felony murder convictions were merged with the first-degree premeditated murder convictions. (Doc. No. 23-11 at 87, 89.) The Petitioner received an effective sentence of life imprisonment. (*Id.* at 82-85.)[3]

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. (Doc. No. 23- 17.) The Tennessee Supreme Court later denied the Petitioner's application for further review. (Doc. No. 23-19.)

In June 2012, the Petitioner filed a *pro se* petition for state post-conviction relief in the Criminal Court of Maury County. (Doc. No. 23-20 at 3-29.) Following the appointment of counsel, an amendment of the petition and an evidentiary hearing, the trial court denied the Petitioner postconviction relief. (*Id.* at 48-50.)

On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. (Doc. No. 23-26.) The Tennessee Supreme Court then denied the Petitioner's request for additional post-conviction review. (Doc. No. 23-28.)

(Docket No. 33-1, pp. 1-3).

## II. PROCEDURAL HISTORY

On November 19, 2014, the Petitioner initiated this action with the *pro se* filing of a Petition

---

[2] The Petitioner was granted a change of venue. Jury selection took place in Wayne County, after which the jurors were transported to Maury County where they remained sequestered during the trial. (Doc. No. 23-1 at 46.)

[3] Against the advice of counsel, Petitioner rejected a plea offer that would require him to plead guilty to facilitation of first-degree murder in exchange for a twenty (20) year sentence at 30%. (Doc. No. 23-22 at 2-3.)

for writ of habeas corpus. Docket No. 1. The Petition consisted of 10 claims. *Id.* Counsel was appointed to represent the Petitioner and was invited to file an Amended Petition if necessary. Doc. No. 10. An Amended Petition was filed that incorporated all claims raised in the original Petition and included nine new claims. Docket No. 16.

The matter was originally assigned to Senior Judge William J. Haynes who ordered the parties to file a "joint statement" containing statements from the parties about: the need for discovery, necessity of an evidentiary hearing and respondent's allegations of procedural default. Docket No. 10, p. 2. Judge Haynes ordered Petitioner to submit a statement of his position regarding discovery and a statement regarding an evidentiary hearing. *Id.* The parties filed the required joint statement (Docket No. 27) and Petitioner filed a summary of the state court record as required by Judge Haynes as well. Docket No. 28. Thereafter, due to the retirement of Judge Haynes, the case was reassigned. Docket No. 32. The Court then issued a Memorandum and Opinion without further briefing, denying Petitioner's writ for habeas corpus relief including a denial of his claims of ineffective assistance on the basis that the procedural default of their state court remedies was unexcused. Docket No. 33.

Petitioner thereafter filed the pending "Motion to Alter or Amend Judgment and Grant *Martinez* Hearing." Docket No. 36. In support of his motion, Petitioner asserts that the court erred in: (1) denying Petitioner an evidentiary hearing based on the mistaken belief that he had made no argument under *Martinez* to show cause for the procedural default of his ineffective assistance of counsel claims; and (2) placing a higher burden on Petitioner than is required by *Martinez*. *Id.* at 1, 5. Petitioner ultimately requests that, following the establishment of "cause" to excuse the procedural default of his ineffective assistance of counsel claims under *Martinez*, this court "address his defaulted claims on the merits, and afterwards grant him habeas corpus relief." Docket

No. 36 at 1-2. Petitioner's request for an evidentiary hearing was granted (Docket No. 40), and the hearing was held on February 27, 2018 (Docket No. 58 at 1). The court then allowed the Parties to file post hearing briefs.

## III.     ANALYSIS

### A.     The Motion to Alter or Amend

#### 1.  Standard of Review

Rule 59(e) of the Federal Rules of Civil Procedure states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The district court may grant a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) for any of four reasons: (1) because of an intervening change in controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *Abnet v. Unifab Corp.*, No. 06-2010, 2009 WL 232998, at *3 (6th Cir. 2009), *citing GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A motion under Rule 59(e) "must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007), *quoting F.D.I.C. v. World University Inc.*, 978 F.2d 10, 16 (1st Cir. 1992).

The "manifest injustice" standard presents the moving party with a high hurdle. *Westerfield v. United States*, 366 Fed. Appx. 614, 620 (6th Cir. 2010). As courts of this Circuit have noted:

> Although the "manifest injustice" ground for a Rule 59(e) motion appears to be a catch-all provision, it is not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind. Instead, whether manifest injustice would result from denying a Rule 59(e) motion is, by definition, a fact-specific analysis that falls squarely within the discretionary authority of the Court. In exercising this discretion, the Court should weigh the importance of bringing litigation to a firm conclusion and the need to render fair and just rulings.

*Harris v. Perry*, No. 2:12-cv-02668-STA-dkv, 2016 WL 5396701, at *3 (W.D. Tenn. 2016), *quoting Lonardo v. Travelers Indem. Co.*, 706 F.Supp.2d 766, 809 (N.D. Ohio 2010) (internal citations omitted). Further, a party may not seek Rule 59(e) relief on the premise of "manifest injustice" if the only error the movant seeks to correct is a "poor strategic decision." *GenCorp.*, 178 F.3d at 834.

Parties cannot use a Rule 59(e) motion "to raise new legal arguments that could have been raised before a judgment was issued." *Id.* This is to say that a Rule 59(e) motion "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). And because of the "narrow purposes" for which the motion is intended, and in light of the judicial system's interests in the finality of judgments and in the conservation of judicial resources, "Rule 59(e) motions typically are denied." *Miller v. Bell*, 655 F. Supp. 2d 838, 844 (E.D. Tenn. 2009) (internal quotation omitted).

### 2. The Case at Bar

Petitioner argues that the District Court erred in finding that Plaintiff offered no explanation as to why the procedurally defaulted claims were not exhausted in state court or what prejudice was sufficient to excuse the procedural default of the claims. Docket No. 36. While acknowledging Petitioner's allusion to *Martinez* in his Amended Petition as a suggestion of an assertion of cause for the procedural default, the Court noted "Petitioner has made no argument under *Martinez* to show cause for the procedural default of the claims. Nor has he identified any prejudice." Docket No. 33, pp. 10-11.

Petitioner contends that he did in fact "properly and fully" invoke *Martinez v. Ryan*, 566 U.S. 1 (2012), to satisfy the "cause" element in his procedurally defaulted ineffective assistance of counsel claims. Docket No. 36. Petitioner attributes the court's failure to acknowledge his

6

*Martinez* claim for relief to the pleading requirements established by District Judge Haynes, to whom the case was formerly assigned. *Id.* Petitioner sets forth the procedure ordered by Judge Haynes to specifically list and identify claims for which he invoked *Martinez* without briefing them fully. *Id.* at 2. These claims were to be followed by a joint filing with further detail to streamline the judge's consideration of the case. Docket No. 10. Petitioner contends he complied with Judge Haynes' order through the filing of the required joint statement of the parties (Docket No. 27) and summary of the state court record (Docket No. 28). Petitioner alleges that in these documents he specifically identified and listed the claims for which he invoked *Martinez* as an exception to procedural default, requested discovery, and requested an evidentiary hearing "to develop evidence regarding post-conviction counsel's deficient performance in pursuing claims that Mr. Guerrero's trial counsel was ineffective." Docket No. 27.

The Respondent argues that Petitioner's motion fails to meet any of the criteria for reconsideration of the court's decision under Rule 59. Docket No. 37. Respondent argues that Petitioner provided the court with no analysis of any *Martinez* claim in his Amended Petition or the Joint Statement. *Id.* at 8. He further asserts that Petitioner never argued his claims were substantial or that post-conviction counsel was ineffective for not raising them on appeal. *Id.* In essence, Respondent contends that the single reference to *Martinez* in the Amended Petition is insufficient to establish cause to overcome the procedural default.

In the post hearing briefs, Petitioner argues that he will suffer a manifest injustice if the Court does not reopen proceedings under Rule 59(e) in order to address his claims on the merits. Docket No. 70, p. 24. Respondent counters that the Rule 59(e) motion requires a "fact-specific analysis that falls squarely within the discretionary authority of the Court" and that the Court should weigh the importance of bringing litigation to a firm conclusion as well as the need to

7

render a fair and just ruling. Docket No. 78, quoting *Lonardo v. Traveler's Indem. Co.*, 706 F. Supp. 2d 766, 779 (2010). Respondent further argues under *Hockenbury v. Sowders* that manifest injustice is frequently interchangeable with "plain error" and Petitioner has failed to show that this court made a clear error of law in its decision, and petitioner cannot show that manifest injustice occurred. 718 F.2d 155, 160 (1983); *Id.*

The undersigned concludes that the reference to *Martinez* in the Amended Petition is itself insufficient to support a claim for relief. However, the required joint statement and summary of the state court record show that the Petitioner sufficiently raised the *Martinez* issue, requested discovery, and requested an evidentiary hearing to establish cause for the procedurally defaulted claims. Docket No. 27.

The case was reassigned after Judge Haynes' retirement. Docket No. 32. The court then ruled on the Petition without any additional briefing. Docket No. 33. Apart from the reference to *Martinez* in the Amended Petition, the court did not address Petitioner's *Martinez* arguments raised in the joint statement (Docket No. 27) or summary of the state court record (Docket No. 28). *Id.* The court did not discuss Judge Haynes' procedures and did not appear to consider them in its ruling. As a result, the court did not consider the merits of the procedurally defaulted claims.

Considering the specific format and pleadings required by Judge Haynes for the purpose of determining procedurally defaulted claims and the failure to consider that in the court's ruling, the undersigned recommends that Petitioner's Motion to Alter or Amend Judgment on the procedurally defaulted claims asserted in the Amended Petition be GRANTED.

## B. The Merits of Petitioner's Claims

Because the undersigned granted an evidentiary hearing and the procedurally defaulted issues have been fully briefed, additional proceedings are not necessary and the undersigned will

consider the merits of habeas corpus relief on these issues. [4]

## 1. Standard of Review

A habeas petitioner is eligible for relief under § 2254 only if he first exhausts his state-court remedies. *See* 28 U.S.C. § 2254(b); *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). The exhaustion requirement demands the petitioner fairly present his federal claim to the state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *West*, 790 F.3d at 697. If the petitioner fails to raise a claim on appeal, in violation of a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default." *West*, 790 F.3d at 697.

In *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." An ineffectiveness claim is insubstantial, and thus insufficient to invoke *Martinez*, if "it does not have any merit or . . . it is wholly without factual support, or . . . the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id.* at 15–16.

In *Trevino v. Thaler*, the Supreme Court expanded the *Martinez* exception to situations where a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013). The Sixth

---

[4] In the Motion to Alter or Amend Judgment, Petitioner included five claims. Docket No. 36, p. 3. Claim III(F) asserted a claim of ineffective counsel for any claims not raised by counsel that were argued in the Amended Petition or Petitioner's original pro se Petition. Docket No. 16, pp. 21-22. Except as discussed herein there are no additional claims that are addressed in Petitioner's briefing regarding the Motion to Alter or Amend Judgment, and thus Claim III(F) can be considered resolved. Docket No. 70.

9

Circuit has held that the *Martinez–Trevino* exception applies in Tennessee cases. *Sutton v. Carpenter*, 745 F.3d 787, 795 (6th Cir. 2014).

The Sixth Circuit has provided the following framework to evaluate claims under *Martinez*:

> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits.

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (internal citations omitted).

Whether post-conviction counsel was ineffective is necessarily connected to the strength of the underlying claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429, at *2 (M.D. Tenn. Jan 8, 2018), *quoting Thorne v. Holloway*, No. 3:14-cv-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 Fed. Appx. 541 (6th Cir. 2016). The joint statement filed by the parties references the Supreme Court's decision in *Martinez* to offer a cause exception for ineffective assistance of counsel because "'without the help of an adequate attorney, a prisoner will have difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim' because such claims 'often require investigative work and an understanding of trial strategy.'" Docket No. 27; 132 S. Ct. at 1317.

If the underlying claim is not sufficiently substantial, "because the 'cause and prejudice' standard is conjunctive rather than disjunctive, the reviewing court would have no need to consider

whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel." *Thorne v. Holloway*, 2014 WL 4411680, at *23. And if the ineffective assistance of trial counsel claim cannot satisfy actual prejudice, there "could not be a reasonable probability that the result of post-conviction proceedings would have been different." *Id.*, *quoting Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014).

To establish ineffective assistance of counsel, a petitioner must demonstrate that under the totality of the circumstances, his or her trial counsel performed deficiently, and that counsel's performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 695 (1984). As the Supreme Court explained:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. To satisfy this prong, counsel must fulfill his or her duty to investigate—"to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. *Strickland* directs that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* As the Supreme Court noted:

11

. . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id.* at 690–91.

As to the "prejudice" inquiry, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000). In essence, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694.

The benchmark for judging any ineffectiveness claim is "whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("[T]he determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'"), *citing United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner alleges that his claims all satisfy the *Strickland* standard for relief, because he argued excuse for his procedural default under *Martinez* in the amended petition, his request for discovery or a hearing, and in Judge Haynes' pretrial order. Docket No. 70, pp. 23-24.

### 2. Analysis of Petitioner's Claims

#### a. Claim III(B), Jury Instructions

In this claim, Petitioner argues that the trial court's jury instructions violated Petitioner's right to due process. More specifically, the Petitioner questions the 'reasonable doubt' instruction (Docket No. 16 at 15-16), the instruction on criminal responsibility (*Id.* at 16-18), the 'intent' instruction (*Id.* at 18) and the instruction for felony murder (*Id.* at 18-19). The court gave the instructions at issue without objection at trial, and they were the instructions from which the jury decided their verdict. Docket No. 23-1, pp. 64-106.

In the Amended Petition, Petitioner argues that each of the four targeted jury instructions was faulty and did not require the jury to find beyond a reasonable doubt that Petitioner was criminally responsible for the actions of his co-defendants. Docket No. 16, pp. 19-20. Petitioner argues that these instructions were therefore unconstitutional and a violation of the Sixth and Fourteenth Amendments. Docket No. 16, pp. 16-19.

13

In the Respondent's Answer to the Amended Petition, Respondent claimed that Petitioner did not overcome the burden of *Strickland* to show that the claim is substantial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); Docket No. 24, p. 57. To demonstrate substantiality, Petitioner must show that "his counsel's performance was deficient and that the deficient performance was prejudicial." *Id.*, pp. 29, 57.

Respondent addressed the issue of state evidentiary standards by citing to *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In *Estelle*, the Supreme Court decided that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 502 U.S. at 67-68. Respondent then claims that the instructions given did not violate federal law, even if they did not satisfy Tennessee's standard, and therefore a claim of ineffective counsel for failure to object to these instructions is meritless. Docket No. 24, pp. 40-41.

### i. Reasonable Doubt Jury Instruction

At trial, the court instructed the jury on the standard by which they were to decide the defendant's guilt. On the issue of reasonable doubt,  the trial court gave the following instruction:

> Reasonable doubt is that doubt created by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every element of proof necessary to constitute the offense.

Docket No. 23-1, pp. 68-69. Furthermore, the Court required the jury to "render your verdict with absolute fairness and impartiality as you think justice and truth dictate." Docket No. 23-1, p. 108.

In the instant motion, Petitioner argues that his counsel was ineffective for failing to object to an instruction that permitted the jury only to find that others committed first-degree murder

14

beyond a reasonable doubt, and not that Petitioner was criminally responsible for those actions beyond a reasonable doubt. Docket No. 36, p. 8. Petitioner argues that the claim has merit under *Sandstrom v. Montana*, 442 U.S. 510 (1979), which requires the prosecution to prove all essential elements of an offense beyond a reasonable doubt. Docket No. 36, p. 8.

Petitioner argues in a footnote of his Post-Hearing Brief in Support of Motion to Alter or Amend Judgment that trial counsel's failure to object to the reasonable doubt instruction and post-conviction counsel's failure to raise this on appeal are arguably unconstitutional because the jury was instructed only that they need "moral certainty" of guilt, which Petitioner argues does not properly state the burden required. Docket No. 70, p. 22.

Respondent's Post-Hearing Brief asserts Petitioner's claim was abandoned and in any event is meritless and not substantial because the jury was instructed it must find "proof beyond a reasonable doubt that the defendant is criminally responsible for the first-degree murders of Juan Castro [and Patricia Garcia] committed by the conduct of another." Docket No. 78, p. 8. Citing trial counsel's testimony that he would have no basis for objecting to the instruction's absence in light of its inclusion, Respondent asserts the claim is "meritless and not substantial." Docket No. 59, p. 66.

In his Reply, Petitioner argues that he did address the reasonable doubt jury instruction in the post-hearing briefing and cited to the allegedly unconstitutional jury instructions provided on reasonable doubt in the trial and the failure of counsel to object. Docket No. 83, pp. 7-8.

The Supreme Court has interpreted the language in the due process clause of the Fourteenth Amendment to the U.S. Constitution to mean that the standard for conviction in all criminal cases, state and federal, is a jury finding "beyond a reasonable doubt." *In re Winship*, 397 U.S. at 368. In the case at bar, it is unlikely that the definition of "reasonable doubt" would have created an

15

ambiguity in the standard by which jurors were to decide, as the Supreme Court in *Victor v. Nebraska* held that "moral certainty" is an acceptable and interchangeable definition of "reasonable doubt." 511 U.S. 1, 12 (1994). The standard set out in *Victor* holds that a definition of "reasonable doubt" is acceptable except when it would make the jury more or less likely to convict than if deciding on a more accurate definition of "reasonable doubt." 511 U.S. at 21-22.

In the instant case, apart from the instruction of reasonable doubt which clearly complies with the law, the Court further instructed the jury that before finding the Defendant guilty of being criminally responsible for first-degree murder they must find all of the essential elements of first-degree murder beyond a reasonable doubt and "proof beyond a reasonable doubt that the Defendant is criminally responsible for the first-degree murder of Juan Castro committed by the conduct of another." Docket No. 23-9, p. 69. Thus, the Court properly instructed the jury on reasonable doubt and that it must find Petitioner criminally responsible only if that was proven beyond a reasonable doubt.

Because the instructions given accurately state the law and the burden on the state to prove Petitioner's guilt beyond a reasonable doubt, counsel's failure to object was not error, was not ineffective and does not provide a basis for relief. Thus, the undersigned recommends that this claim for relief be DENIED.

### ii. Criminal Responsibility Instructions

The trial court gave the following instruction on criminal responsibility:

> The defendant is criminally responsible as a party to the offense if the offense was committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or both. Each party to the offense may be charged with the commission of the offense.

> The defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant

16

direct [sic], aids, or attempts to aid another person to commit the offense.

Before you find the defendant guilty of being criminally responsible for said offense committed by the conduct of another, you must find that all the essential elements of said offense have been proven by the state beyond a reasonable doubt.

Mere presence during the commission of the crime is not sufficient to support a conviction on a theory of criminal responsibility for the conduct of another.

Docket No. 23-23, p. 10.

Petitioner claims that the Court failed to require the prosecution to prove and jury to find beyond a reasonable doubt that Petitioner was "in reality criminally responsible for the conduct of others" who commited the shooting. Docket No. 16, p. 16. Petitioner argues that this relieved the burden on the prosecution of proving guilt beyond a reasonable doubt as required by the Constitution. *Id.*

As set forth above, the trial court properly instructed the jury on the issue of criminal responsibility. That instruction specifically stated that for the Defendant to be guilty of being criminally responsible the jury must find all of the essential elements of the offense proven by the state beyond a reasonable doubt. Docket No. 23-23, p. 10. For habeas relief on the basis of incorrect jury instructions, a habeas petitioner must show more than that the instructions are undesirable, erroneous or universally condemned and must prove that as a whole, the jury instructions were so infirm as to render the trial fundamentally unfair. *Henderson v. Kibbe*, 431 U. S. 145, 154, 97 S. Ct. 1730 (1977). Because the instruction is not contrary to clearly established federal law, habeas relief is not warranted on this claim. *Francis v. Franklin*, 471 U. S. 307, 316, 105 S. Ct. 1965 (1985). Therefore, the undersigned recommends that this claim for relief be DENIED.

### iii. Intent Instruction

The court instructed the jury on "intent" for first-degree (premeditated) murder:

A person acts intentionally when it is the person's conscious objective or desire to

17

cause the death of the alleged victim; A defendant's conscious objective need not be to kill a specific victim. If you find beyond a reasonable doubt that the defendant intended to cause the result, the death of a person, and that he did so with premeditation, then the killing of another, even if not the intended victim, would be first-degree murder.

Docket No. 23-1, p. 74.

Petitioner argues that the instructions on intent only required that the defendant intend to cause the death of a person with premeditation, not necessarily to have the intent to cause the death of a specific individual. Docket 16, p. 18. Petitioner alleges that this relieves the prosecution of proving all elements of the charged offenses beyond a reasonable doubt if the intent burden is lessened. *Id.*

As with the other instructions, the trial court's instruction on intent was proper. Especially when considered in the context of the whole charge. Petitioner has presented no evidence that the instructions were contrary to federal law and made no showing of prejudice sufficient to support this particular ineffective assistance claim. Therefore, the undersigned concludes that this claim does not warrant habeas corpus relief and recommends that it be DENIED.

### iv. Felony Murder Instruction

At trial, the court gave the following instruction on felony murder:

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1)     That the defendant, or one for whom the defendant is criminally responsible, unlawfully killed the alleged victim; and
(2)     That the killing was committed in the perpetration of or the attempt to perpetrate the alleged attempted first-degree murder; that is, that the murder and was not a separate, distinct and independent event; and
(3)     That the defendant intended to commit the alleged attempted first-degree murder.

Docket No. 23-1, p. 84.

Petitioner alleges that the court, without objection, wrongfully allowed the jury to find an

attempted first-degree murder of a victim to provide the underlying felony to support a first-degree murder conviction. Docket No. 36, p. 11. On the felony-murder claim, Petitioner asserts that using an assault to make every homicide a felony-murder is an incorrect use of law. *Id.* at pp. 8-9. Petitioner distinguishes a case in which a felony-murder conviction is permitted for attempted murder of someone other than the person killed, versus a wrongful charge where the defendant could not be convicted of felony murder based on an attempted murder of the same individual. *State v. Gayden*, 259 Kan. 69 (1996); *Milton v. State*, 161 So. 3d 1245 (Fla. 2014); Docket No. 36, pp. 8-9.

In this case, the Petitioner's felony murder charge need not be based solely upon the assault or attempted murder of the individuals who were actually killed. While only two individuals were killed, there were eleven individuals in the vehicle that was targeted. The instructions given in this case were appropriate and Petitioner has failed to establish that counsel was ineffective for not objecting.

Petitioner failed to establish that the court's instructions on the standard of conviction were erroneous and would prejudice the defendant; therefore, counsel was not ineffective for failing to raise an objection to this instruction. The undersigned therefore recommends that this claim be DENIED.

**b.    Claim III(C), Failure to Interview and Present Exculpatory Proof from Jason Fletcher**

Petitioner raises the issue of trial counsel's failure to call Jason Fletcher as a witness in his Amended Petition as a basis for relief. Docket No. 16, pp. 20-21. Fletcher was a friend of one of the shooters and testified as a prosecution witness in the trial of that co-defendant. *Id.* Petitioner contends that if called, Fletcher would provide exculpatory evidence. *Id.*

According to Petitioner's Amended Petition and the Summary of the State Record, Jason

Fletcher was a friend of Petitioner's codefendant, Charles Lowe-Kelley. Docket No. 16, p. 7; Docket No. 36, p. 7. The day following the shooting for which Petitioner has been convicted, Lowe-Kelley allegedly went to Fletcher and told him about the event the day prior. *Id.* He purportedly told Fletcher that Robert Guerrero handed the .38 pistol to Lowe-Kelley, and it was Javoris Sparkman who started shooting, and then Lowe-Kelley joined in until they were out of rounds. *State v. Lowe-Kelley*, 2011 Tenn. Crim. App. 2011 WL 497465, 9 (2011); Docket No. 36, p. 7.

In Petitioner's Amended Petition, he contends that Jason Fletcher testified at the trial of Petitioner's co-defendant Charles Lowe-Kelley and testified to information that would have contradicted the state's theory on Petitioner's guilt. Docket No. 16, p. 20. Fletcher testified in Kelley's case that it was Robert Guerrero who handed the .38 caliber pistol to Mr. Kelley, and it was Javoris Sparkman who started shooting, after which Kelley joined in until the firearms ran out of rounds. *Id.* Petitioner argues that the fact that Kelley did not mention Petitioner in telling Fletcher about the crime further minimizes Petitioner's involvement in the crime. *Id.* at 21.

Respondent argues that Petitioner has not met the burden of showing that his claim of ineffective assistance on the failure to investigate Fletcher is substantial or meritorious. Docket No. 24, p. 58. To show this, Respondent alleges that Petitioner has neither demonstrated that the claim is substantial nor shown that Petitioner is prejudiced by the deficient performance. *Id.* Respondent claims that because Fletcher was not called to testify at the post-conviction hearing, Petitioner cannot establish that Fletcher's testimony would have changed Petitioner's conviction outcome. *Id.* at p. 59.

In his Motion to Alter or Amend, Petitioner claims that Fletcher's testimony was unique from that presented at Petitioner's trial and that his testimony presented at a co-defendant's trial

20

could have demonstrated that Petitioner was not criminally responsible for the deaths caused by his co-defendants. Docket No. 36, p. 8. Petitioner argues that calling Fletcher would have presented useful evidence to the jury and Petitioner was prejudiced because his attorney did not attempt to present such evidence. *Id.*

In his deposition, trial counsel stated that he was afraid to call Fletcher because of the possibility that he would discuss the distinction of "passing the strap," which could lead the jury to believe that the "strap" was the pistol, and counsel did not know what Fletcher would say about that because he never interviewed Fletcher. Docket No. 59, p. 76. Furthermore, and most importantly, trial counsel testified that he would be sure not to call anyone he thought was a member of Petitioner's gang, for fear of the trial focusing on Petitioner's gang membership. *Id.* at 73. Trial counsel claims that he attempted to find Fletcher, called at least once, visited where he thought Fletcher lived, and called his landlord. *Id.* at 77. However, trial counsel does not remember how frequently he did this, just that he never reached Fletcher. *Id.* at 77. Trial counsel did not send an investigator to find Fletcher, though the state was eventually able to locate him. *Id.* at 77-78.

Petitioner's Post-Hearing Brief asserts trial and post-conviction counsel were both ineffective for failing to raise the claim of ineffective trial counsel for failure to call Mr. Fletcher as a witness. Docket No. 70, p. 11, 17. Petitioner alleges that post-conviction counsel concedes that he was not aware of Fletcher's statement to the authorities or testimony from Fletcher himself. *Id.* at 11. On the contrary, Petitioner argues that trial counsel was ineffective because he knew of Fletcher's statements and tried to interview Fletcher but abandoned the possibility of obtaining his testimony when he could not find him. *Id.* at 18, 20. Petitioner argues that trial counsel acknowledged that he had no other witnesses who could testify about what happened in the vehicle on the night of the shooting because all of Petitioner's co-defendants were unwilling to testify, and

that his efforts to find him further demonstrate that Fletcher was an important witness. *Id.* at 18-19. Petitioner alleges that trial counsel made no tactical decision not to call Fletcher as a witness and that this made counsel ineffective. *Id.* at 19.

Respondent's Post-Hearing Brief contends that Fletcher's testimony did not contradict Petitioner's statement to police, and therefore the Petitioner is unable to show prejudice with consistent and merely corroborating evidence. Docket No. 78, p. 9. Respondent attacks Petitioner's claim that failure to call this witness was ineffective because trial counsel had researched Fletcher and had a sub-file of his statements in preparation for trial. *Id.* Respondent claims that trial counsel did investigate Jason Fletcher for trial, and simply chose not to pursue him further as a witness. *Id.* at 10.

To Respondent's claim that trial counsel made a tactical decision, Petitioner argues in Reply that trial counsel could not have made a tactical decision not to call a witness without investigating and interviewing said witness to know what their testimony would be. Docket No. 83, p. 7.

Petitioner's trial counsel was an experienced, veteran criminal defense lawyer having tried in excess of 70 jury trials and with decades of litigation experience. Docket No. 59, pp. 55-57**.** Counsel believed he could obtain a favorable jury verdict for Petitioner in this circumstantial evidence case based upon the fact that there was no forensic evidence connecting Mr. Guerrero to the offense. *Id.* at pp. 13-14. He believed the trial court's pretrial ruling allowing reference to Mr. Guerrero's gang affiliation was "devastating." *Id.* While trial counsel did not interview Mr. Fletcher and cannot recall making a strategic decision not to call Mr. Fletcher, it is clear that he was aware of Mr. Fletcher's potential testimony, having received Fletcher's statement prior to trial. While Mr. Fletcher's trial testimony denied being involved in a gang, he did describe the

22

altercation which preceded the shooting as involving a "rival gang" and identified those individuals as rivals of both Erik Guerrero and himself. Docket No. 53-7, p. 12. Given trial counsel's strongly held belief about the quality of the existing evidence, knowledge of Mr. Fletcher's statement to law enforcement and concerns regarding Mr. Guerrero's gang affiliation and its impact on the trial; Petitioner failed to establish trial counsel was ineffective. Not further investigating or calling Mr. Fletcher as a witness was not deficient performance nor did it result in prejudice to Petitioner. Therefore, the undersigned recommends that this claim be DENIED.

### c. Claim III(D), Failure to Object to the Absence of an Instruction on Circumstantial Evidence in the Concluding Instructions

Petitioner contends that counsel was ineffective because they failed to request an instruction on circumstantial evidence in the concluding jury instructions given by the Court. Docket No. 16, p. 21. Petitioner alleges that the lack of instructions before deliberation was unconstitutional and counsel's failure to object was ineffective.

The following instruction on circumstantial evidence was given to the jury at the commencement of trial:

> Circumstantial evidence is all the testimony and exhibits which give you clues about what happened in an indirect way. It consists of all the evidence which is not direct evidence. Do not assume that direct evidence is always better than circumstantial evidence. Either type of evidence can prove a fact if it is convincing enough. A defendant may be convicted on direct evidence, circumstantial evidence, or both. When the evidence is entirely circumstantial, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the theory of guilt, and that facts must exclude every other reasonable theory except that of guilt.

Docket No. 23-23, pp. 6-7.

Petitioner argues in the Amended Petition that trial counsel was ineffective for failing to request a circumstantial evidence instruction before jury deliberations that required the jury to exclude all reasonable hypotheses except Petitioner's guilt to find a guilty verdict, and that

appellate counsel was ineffective for failing to raise this issue on review. Docket 16, p. 21.

Respondent's Answer alleges that the jury instructions do, in fact, contain the circumstantial evidence instruction, it was merely given in the introductory instructions. Docket No. 23-23, pp. 6-7; Docket No. 24, p. 61. Furthermore, Respondent claims that an ineffective-assistance-of-counsel claim cannot have merit if the instruction allegedly not given was, in fact, given to the jury. Docket No. 24, p. 61.

In his Motion to Alter or Amend Judgment, Petitioner claims that trial and appellate counsel were ineffective for not requesting a circumstantial evidence jury instruction before deliberations and relies heavily on *Tappan v. State* for support in this allegation. 2010 WL 3463310 (Tenn. Crim. App. 2010). In light of *Tappan*, Petitioner claims that his "nearly-identical" claim has "some merit." Docket No. 36, p. 9.

Trial counsel for the Petitioner testified in his deposition that it was the practice of the presiding judge to give preliminary instructions, and the jury would then be sent back to deliberate after the trial with both the preliminary and final instructions. Docket No. 59, p. 47. Trial counsel stated that if the circumstantial evidence instruction was not in the concluding instructions and he did not object, he must have thought that the instruction was adequately given in the preliminary instructions. *Id.*

Petitioner argues in his Post-Hearing Brief that his post-conviction counsel did not perceive any ineffectiveness claim with the judge's failure to include circumstantial evidence instructions in the concluding jury instructions when he should have identified a constitutional issue. Docket No. 70, p. 12. Trial counsel for the Petitioner testified that he was not surprised to hear circumstantial evidence instructions in the preliminary jury instruction, but not after. *Id.* at 21. He believed it was adequately covered and did not make a tactical decision not to object to the lack of

instruction at the end of trial. Docket No. 59, p. 63; Docket No. 70, p. 21. Petitioner's argument is that the jury instruction, while given, should have been given at the end of the trial, especially given the prosecution's exclusive reliance on circumstantial evidence that Petitioner had handled the firearm in this case. Docket No. 70, p. 22.

In the Post-Hearing Brief, Respondent argues that the Petitioner has no ground to state an ineffectiveness claim because the instruction the Petitioner argues was not given, was, in fact, given. Docket No. 78, p. 10. Respondent highlights the fact that Petitioner has been unable to cite to case law that would show the circumstantial evidence instruction must be given at a particular time. *Id.* at 11. Petitioner's trial counsel testified that he, now as a sitting judge, also prefers to give circumstantial evidence instructions in the preliminary jury instructions as opposed to in concluding jury instructions. *Id.* at 10-11. Because Respondent argues that Petitioner cannot cite precedent or other authority to support his claim, Respondent argues that the claim is meritless and not substantial. *Id.* at 11.

In *Tappan*, which Petitioner heavily references, petitioner was convicted on counts of aggravated burglary and theft, to be served over 14 years. 2010 WL 3463310 at *1 (Tenn. Crim. App. 2010). On appeal, after a denial of post-conviction relief, Tappan alleged that there should have been a jury instruction on circumstantial evidence when the entirety of the theft claim of conviction was based on it. *Id.* at *7. He argued that counsel was ineffective for failing to request the instruction. *Id.* The court in *Tappan* agreed that omitting the circumstantial evidence instruction was error and that counsel was ineffective for failing to request the instruction. *Id.* at *7. The Court reversed and remanded the theft conviction for a new trial based on ineffective counsel on the circumstantial evidence instruction. *Id.* at *8.

Petitioner argues that *Tappan v. State* is persuasive authority on this issue. However, unlike

25

the instant case, no instruction was given in *Tappan* on the topic of circumstantial evidence. 2010 WL 3463310 at 20; Docket No. 36, p. 9. The case at bar raises a question of timing of when the circumstantial instruction was given as opposed to whether the instruction was given at all. Docket No. 78, p. 10. Petitioner cites no authority that not giving the instruction in the closing instructions is equivalent to not giving the instruction at all. Based on this critical distinction, Petitioner's reliance on *Tappan* is inapposite.

While the original trial occurred in Tennessee state court and the habeas proceeding is filed in federal court, the state standard is used to determine whether a violation of due process occurred. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005). If the state court complied with the state standard for jury instruction on this topic, then there is no reason to consider any issues of the federal standard, because sufficiency of state-court proceedings in the state of their occurrence is enough to satisfy federal habeas claims. *Bradshaw*, 546 U.S. at 79.

In Tennessee, a defendant has a "constitutional right to a correct and complete charge of the law." *Tappan v. State,* 2010 WL 3463310; *citing State v. Teel*, 793 S.W. 2d 236, 249 (Tenn. 1990). Therefore, courts should give a requested instruction if "it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." *Tappan*, 2010 WL 3463310, *citing State v. Phipps*, 883 S.W. 2d 138, 150 n. 20 (Tenn. Crim. App. 1994). In the case at bar, an instruction on circumstantial evidence was given in the introductory jury instructions. The jury reasonably can be expected to abide by those instructions.

Petitioner has not established that failure to instruct the jury on circumstantial evidence immediately prior to deliberation was a failure of due process, and therefore counsel was not ineffective for failing to raise the objection. The undersigned recommends that this claim for relief be DENIED.

26

#### d. Claim III(E), Failure to Challenge Composition of Grand Jury and Selection of Grand Jury Foreperson

Petitioner claims that post-conviction counsel and trial counsel were ineffective for failing to raise a claim of discrimination against women and people of color in the selection of the grand jury foreperson. Docket No. 16, p. 26. Petitioner contends that he was indicted by a grand jury from which African American and Hispanics were systematically underrepresented and were excluded including his foreperson. *Id.* p. 22. In addition to recounting the identities and demographic characteristics of the forepersons active between 1994 and 2008, the Petitioner notes they were selected in accordance with Rule 6 of the Tennessee Rules of Criminal Procedure which allowed sole discretion of judges to select the foreperson providing the opportunity for discrimination in that selection. *Id.* Under these circumstances, he submits, he was indicted in violation of the Sixth and Fourteen Amendments including the right to equal protection, due process and to a grand jury and foreperson drawn from a fair cross section of the community. *Id.* at p. 24.

Respondent's Answer to the Petition asserts that the role of the grand jury foreperson in Tennessee is "ministerial and administrative" and to establish an equal protection claim defendants must show that such discrimination "tainted the entire grand jury." *State v. Bondurant*, 4 S.W.3d 662, 675 (Tenn. 1999); Docket No. 24, p. 63. Respondent asserts the grand jury composition claim is without merit because there is no evidence of the composition of the grand jury that would support either prong of the *Strickland* test. *Id.* at p. 62. Because there is no proof that racial discrimination tainted the entire grand jury, and no due process analysis, Petitioner cannot establish his counsel was ineffective for failing to assert these claims. *Id.* at p. 24. Finally, Petitioner's fair cross section challenge to the foreperson under the Sixth Amendment has not been recognized by the Courts and thus counsel could not have been ineffective for failing to raise it. *Id.* at pp. 24-25.

27

In Petitioner's Post-Hearing Brief he argues that post-conviction counsel was ineffective for failing to raise the foreperson discrimination claim. Docket No. 70, p. 10. Petitioner argues that his post-conviction counsel did not recognize the existence of such a claim, and therefore did not challenge trial counsel's failure to raise it. *Id.* Petitioner also argues that trial counsel was unaware of the Supreme Court opinion in *Rose v. Mitchell* and therefore it was not a strategic decision not to challenge to the selection of the grand jury foreperson. 443 U.S. 400 (1991); Docket No. 70, p. 16.

In *Rose v. Mitchell*, the petitioners were African-American and were arguing underrepresentation of African-Americans as members of the grand jury. 440 U.S. at 555-56. *Rose*'s opinion states "the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or the identifiable group to which he belongs." *Rose v. Mitchell*, 443 U.S. at 555; *citing Castaneda v. Partida*, 430 U.S. at 494. Petitioner argues that a party may also allege discrimination even if they are not a member of the underrepresented party under *Powers v. Ohio*, though that case only relates to discrimination in regard to peremptory challenges and not to the identity of the grand jury foreperson. 499 U.S. 400 (1991); Docket No. 70, p. 15. Petitioner argues that because post-conviction counsel was unaware of the law and thus did not make a tactical decision, counsel was ineffective under *Hinton* and *Kimmelman. Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986); Docket No. 70, p. 10. *Hinton* and *Kimmelman* found counsel's failure to investigate the law on dispositive issues was defective, and also that this defectiveness was prejudicial. *Hinton,* 134 S. Ct. at 1088; *Kimmelman*, 477 U.S. at 385; Docket No. 70, p. 10. Petitioner alleges that the Sixth Circuit has found counsel performs deficiently under *Strickland* when counsel fails to recognize and pursue a viable issue. *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006); Docket No.

70, p. 17.

Respondent's Post-Hearing Brief argues first that Petitioner's due process claim of race discrimination in selection of the grand jury foreperson fails under *Hobby v. United States*. 468 U.S. at 344; Docket No. 78, p. 11. In *Hobby v. United States*, the Supreme Court held that discrimination in the selection of the grand jury foreman does not threaten the interests of the defendant under the Due Process Clause, and when the grand jury foreman's role is "clerical in nature," discrimination would not so significantly affect the fairness of the process to undermine the indictment as a whole. 468 U.S. 339, 34 (1984). Respondent argues that Petitioner has not presented evidence to overcome this burden and therefore an ineffective counsel claim is not sustainable on due process grounds. Docket No. 24, p. 63. Furthermore, Respondent argues under *Henley v. Bell* "the [United States] Supreme Court has never allowed defendants to challenge the composition of their grand juries based on the Sixth Amendment." 487 F.3d 379, 387 (6th Cir. 2007). Respondent argues that Petitioner is unable to raise a claim under Tennessee courts that the Supreme Court would not allow. Docket No. 24, pp. 63-64.

In Petitioner's Reply to Respondent's Post-Hearing Brief, Petitioner claims that *Hobby* does not control the case at bar because *Hobby* was a federal case that alleged discrimination in selection of a federal grand jury foreperson and not a state claim. Docket No. 83, p.4. *Rose* held that a claim of discrimination in the selection of state grand jury foreperson is cognizable in federal habeas corpus, because the grand jury foreman functions differently in the state from federal courts, and the grand jury foreperson in Tennessee at that time was appointed from the eligible population and not from the grand jury members. *Id.* In *Rose*, the thirteenth grand jury member could make a substantial difference in the case, whereas in *Hobby*, the selection of a grand jury foreperson from the pool of grand jurors was likely not to be significant if the grand jury foreperson

29

role was ministerial in nature. *Hobby*, 468 U.S. 339, 344 (1984); *Rose*, 443 U.S. 545, 551 (1979). Petitioner also argues that *Henley* is not binding precedent on the case at bar, because *Henley* discusses the fair-cross section claim arising under the Sixth Amendment but does not address Petitioner's due process claim under the Fourteenth Amendment. 487 F.3d at 387; Docket No. 83, p. 5.

Petitioner also argues in Reply that Respondent failed to argue that Petitioner had no right to challenge the constitutionality of the grand jury makeup as a matter of equal protection. *Hobby*, 468 U.S. at 347; *Powers*, 499 U.S. at 400; Docket No. 83, p. 6. Petitioner alleges that in Respondent's failure to defend this claim, it must have merit. Docket No. 83, p. 6.

In the deposition of Petitioner's trial counsel, he acknowledged that the issue of the discrimination in selection of the grand jury foreman was not on his radar. Docket No. 59, p. 61. Trial counsel also stated that while he had looked into jury composition before, he had never raised this kind of foreperson discrimination claim before and was unaware of any other lawyer who had raised the issue. *Id.* at 48-50. In fact, he found the claim to be "fairly unique." *Id.* at p. 62.

The Petitioner contends that trial and post-conviction counsel were ineffective in failing to investigate discrimination in the race and gender of the grand jury foreperson and failing to challenge the indictment on this basis. Petitioner's argument primarily relies upon the seminal cases of *Rose, Hobby and Campbell.* However, these cases do not appear to afford Petitioner the relief he requests.

As a threshold matter, despite the allegation in his Petition that the composition of the grand jury was the product of discrimination and unconstitutional (Docket No. 16, p. 21) there is no argument or evidence regarding the composition of the grand jury in this case and therefore no basis to afford Petitioner relief on this ground. The Tennessee Supreme Court addressed the issue

of grand jury foreperson discrimination in *State v. Bondurant*, 4 S. W. 3d 662 (Tenn. 1999). In *Bondurant*, the Defendant argued that his indictment should be quashed because of racial discrimination in the selection of grand jury forepersons in Giles County. *Id.* at p. 674. Specifically, he argued that although African Americans comprised 12% of the adult population in Giles County, from 1919 until 1990, no African American had served as foreperson of a grand jury in Giles County. Like Petitioner, the Defendant in *Bondurant* relied upon the Supreme Court decision in *Rose v. Mitchell* to support his assertion. *Id.* After discussing *Rose, Hobby and Campbell,* the Tennessee Supreme Court concluded that in Tennessee "the role of the grand jury foreperson is ministerial and administrative." *Id.* at p. 675. The Supreme Court likewise interpreted *Campbell* to hold that "the method of selection of the grand jury foreperson is relevant to the extent that it effects the racial composition of the entire grand jury." *Id.*

Given the clearly established role of a grand jury foreperson in Tennessee, Petitioner's argument, like the Defendant in *Bondurant,* must fail. Apart from the fact that during the time period cited by Petitioner the grand jury foreperson was not exclusively a white male, there is simply no evidence establishing the composition of the grand jury as a whole was discriminatory or systematically excluded minority or other cognizable groups. Because he failed to offer proof showing that racial discrimination tainted the entire grand jury or that the grand jury foreperson exercised greater dominion over the process in light of the Tennessee Supreme Court's holding in *Bondurant*, Petitioner cannot show actual prejudice to excuse the procedural default of his foreperson discrimination claim or that counsel was ineffective and therefore the undersigned recommends that this claim be DENIED.

31

## IV.     RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Petitioner's "Motion to Alter or Amend Judgment and Grant *Martinez* Hearing" be GRANTED. The undersigned, after allowing additional discovery, an evidentiary hearing, and further briefing, concludes that the issues are fully and properly briefed before the court and should therefore be considered on the merits. For the reasons discussed fully above, the undersigned recommends Petitioner's Motion for Habeas Corpus relief on the procedurally defaulted claims be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

32