# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| ERIK E. GUERRERO, | ) |
| | ) |
|    Petitioner, | ) |
| | )   NO. 1:14-cv-00151 |
| v. | ) |
| | )   JUDGE CAMPBELL |
| | )   MAGISTRATE JUDGE FRENSLEY |
| MICHAEL DONAHUE, | ) |
| | ) |
|    Respondent. | ) |

## ORDER

Pending before the Court is the Magistrate Judge's Report and Recommendation (Doc. No. 84), recommending the Court grant Petitioner's Motion to Alter or Amend and Grant *Martinez* Hearing (Doc. No. 36), but deny Petitioner's request for habeas corpus relief. Respondent and Petitioner have both filed Objections (Doc. No. 85, 86, 89) to the Report and Recommendation.

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.02, a district court reviews *de novo* any portion of a report and recommendation to which a specific objection is made. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). General or conclusory objections are insufficient. *See Zimmerman v. Cason*, 354 F. Appx. 228, 230 (6th Cir. 2009). Thus, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Id.* (quoting *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). In conducting the review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

As explained in the Report, Petitioner was convicted in Tennessee state court of two counts of first-degree murder, two counts of first-degree felony murder, and nine counts of attempted

first-degree murder. *State v. Guerrero,* 2011 WL 3107722, at *1 (Tenn. Crim. App. July 25, 2011). The convictions arose out of a shooting that occurred while two vehicles, a Pontiac Grand Am and a Ford Expedition, were traveling down a highway in Maury County, Tennessee on April 13, 2008. *Id.* Earlier in the evening, a fight broke out during a party, and police intervened and dispersed the crowd. *Id.* Later in the evening, the Grand Am and the Expedition, containing persons who had attended the party, were traveling down the highway when shots were fired from the Grand Am into the Expedition. *Id.* The shots hit four of the eleven passengers traveling in the Expedition, two of whom died as a result. *Id.* Petitioner was a passenger in the rear seat of the Grand Am at the time of the incident. *Id.* Upon conviction, Petitioner received an effective sentence of life imprisonment. *Id.,* at *11.

After exhausting his direct appeal and post-conviction remedies in state court, Petitioner filed a *pro se* petition for writ of habeas corpus in this court, which was assigned to now-retired Judge William J. Haynes, Jr. (Doc. No. 1). Judge Haynes required the parties to file a joint statement regarding the need for discovery, the necessity of an evidentiary hearing, and an outline of Respondent's procedural default arguments. (Doc. No. 10). Judge Haynes also required Petitioner to file a summary of the state court record addressing specific topics. (*Id.*) The parties filed the required information, and some time thereafter, Judge Haynes retired, and the case was reassigned to Chief Judge Waverly D. Crenshaw, Jr. (Doc. Nos. 27, 28, 32). Without requiring additional filings from the parties, Judge Crenshaw issued a Memorandum and Order dismissing the Amended Petition. (Doc. Nos. 33, 34). Petitioner then filed the pending motion to alter or amend, pursuant to Federal Rule of Civil Procedure 59, in which he contends Judge Crenshaw mistakenly believed Petitioner had not invoked *Martinez v. Ryan,* 566 U.S. 1, 132 S. Ct. 1309,

1313, 182 L. Ed. 2d 272 (2012) as supplying "cause" to overcome his procedurally defaulted claims for ineffective assistance of counsel.

The Magistrate Judge concluded that Petitioner's motion to alter or amend should be granted to enable consideration of Petitioner's *Martinez* arguments. (Doc. No. 84, at 5-8). The Magistrate Judge reasoned that the unique procedure followed by Judge Haynes in habeas corpus cases contemplated the filing of briefs by the parties containing additional detail on the issues, after the filing of the joint statement but before the court issued a ruling. (*Id.*) Due to Judge Haynes' retirement and the reassignment of the case, supplemental briefs were not filed before Judge Crenshaw issued his ruling. (*Id.*)

Through his Objection, Respondent argues the Magistrate Judge's decision to grant the motion to alter or amend was in error. "A Rule 59 motion should only be granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Michigan Flyer LLC v. Wayne Cty. Airport Auth.,* 860 F.3d 425, 431 (6th Cir. 2017). The motion is not an opportunity for a party to re-argue his case, but is appropriate where the court misapprehended the facts, or a party's position, or the controlling law. *Id.; Alpenglow Botanicals, LLC v. United States,* 894 F.3d 1187, 1203 (10th Cir. 2018); *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191-92 (7th Cir. 1990).

The Court agrees with the Magistrate Judge that, given the unique circumstances of this case, including Judge Haynes' distinctive habeas corpus procedure and subsequent retirement before the case was fully briefed, Petitioner's Rule 59 motion should be granted to enable consideration of Petitioner's *Martinez* arguments.

After holding an evidentiary hearing, the Magistrate Judge went on to decide Petitioner had

3

not established ineffective assistance of counsel supplying "cause" for the following claims: (1) failure to object to jury instructions on "reasonable doubt," "criminal responsibility," "intent," and "felony murder;" (2) failure to interview and present exculpatory proof from Jason Fletcher; (3) failure to object to the absence of an instruction on circumstantial evidence in the concluding jury instructions; and (4) failure to challenge selection of the grand jury foreperson. (Doc. No. 84, at 13-31). Through his Objections, Petitioner argues the Magistrate Judge erred in reaching these conclusions. The Respondent has not filed a response to Petitioner's Objections.

The trial court gave the following instruction on "reasonable doubt:"

> Reasonable doubt is that doubt created by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every element of proof necessary to constitute the offense.

(Doc. No. 23-1, at 68-69). The court also instructed the jury to "render your verdict with absolute fairness and impartiality as you think justice and truth dictate." (*Id.,* at 108). The Magistrate Judge concluded that trial counsel was not ineffective for failing to object to the instruction because the instruction accurately states the law.

Petitioner argues that conclusion is erroneous because the Magistrate Judge relied on *Victor v. Nebraska,* 511 U.S. 1, 12, 114 S. Ct. 1239, 127 L. Ed. 2d 583) (1994) in reaching his conclusion. According to Petitioner, *Victor* did not hold that "moral certainty" is an acceptable definition of "reasonable doubt." In *Victor,* the Supreme Court considered challenges to "reasonable doubt" definitions given by two different courts, including the courts' use of the phrase "moral certainty." Although the Court did not condone use of the phrase, it concluded the instructions given adequately conveyed constitutional standards when considered with the other

4

instructions given by the courts. 511 U.S. at 13-21.

In this case, Petitioner has not shown the "reasonable doubt" instruction made it more likely the jury would find guilt based on a standard less than that required by *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The Sixth Circuit has applied *Victor* in upholding the constitutionality of "reasonable doubt" instructions using almost identical language to that given at Petitioner's trial. *Austin v. Bell,* 126 F.3d 843, 846-47 (6th Cir. 1997); *Workman v. Bell,* 178 F.3d 759, 776–777 (6th Cir.1998); *Coe v. Bell,* 161 F.3d 320, 329 (6th Cir. 1998). Thus, Petitioner has failed to establish trial counsel was ineffective for failing to challenge the instruction.

Petitioner argues the Magistrate Judge also erred in concluding trial counsel was not ineffective for failing to challenge the trial court's felony murder instruction. The trial court gave the following instruction on "felony murder:"

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) That the defendant, or one for whom the defendant is criminally responsible, unlawfully killed the alleged victim; and
>
> (2) That the killing was committed in the perpetration of or the attempt to perpetrate the alleged attempted first-degree murder; that is, that the murder and was not a separate, distinct and independent event; and
>
> (3) That the defendant intended to commit the alleged attempted first-degree murder.

(Doc. No. 23-1, at. 84). Petitioner argues the instruction permits the attempted first-degree murder of a victim to serve as the underlying felony to support a first-degree felony murder conviction of that same victim. As the Magistrate Judge pointed out, however, there were nine individuals in the targeted vehicle who were victims of assault and two individuals who were

murdered. Thus, the victim of the underlying felony of assault was not necessarily the same victim of the felony murder. The language of the instruction does not suggest otherwise, and therefore, counsel was not ineffective for failing to challenge the instruction.[1]

Petitioner argues the Magistrate Judge erred in concluding trial counsel was not ineffective for failing to interview and present exculpatory proof from Jason Fletcher. Petitioner did not call Mr. Fletcher to testify at the evidentiary hearing but suggests his testimony would have been exculpatory based on his testimony at the trial of co-defendant Charles E. Lowe-Kelley. That testimony was described by the Tennessee Court of Criminal Appeals, as follows, in addressing Mr. Kelly's appeal:

> Jason Fletcher drove the defendant [Mr. Lowe-Kelley] to the Armory at approximately 11:00 p.m. on April 12, 2008. Mr. Fletcher went home and saw the defendant again the next day at approximately 1:00 p.m. when the defendant showed up on his front porch steps. The defendant told Mr. Fletcher that he needed to talk to him. Mr. Fletcher recalled that the defendant was wearing shorts and that his legs were "scarred ... like he'd been running through thorns." The defendant told Mr. Fletcher that "a fight broke out" at the Armory and that Robert Guerrero had handed him a gun and "told him to be ready." The defendant told Mr. Fletcher that they pulled up beside the victims' vehicle and started shooting. The defendant told Mr. Fletcher that Mr. Sparkman had the SKS rifle, that he had a .38 caliber handgun, and that he "emptied the clip." Mr. Fletcher told the defendant to leave his house. Although Mr. Fletcher did not contact the police, he did give a statement to the police once they contacted him.

*State v. Lowe-Kelley*, 2012 WL 5873512, at *3 (Tenn. Crim. App. Nov. 20, 2012). Because Mr. Fletcher did not mention Petitioner's involvement, Petitioner contends his testimony would have contradicted the State's theory that he might have been one of the shooters or that he passed weapons to the shooters.

In affirming Petitioner's convictions, the Tennessee Court of Criminal Appeals described the evidence supporting the convictions, which included Petitioner's own statement to police:

---

[1] Petitioner does not address the "criminal responsibility" and "intent" instructions in his Objections.

> The evidence considered in the light most favorable to the State proves that the Defendant and his co-defendants attended a party at the National Guard Armory during which a fight broke out. A member of a rival gang shoved Robert Guerrero, and the Defendant and Sparkman intervened on Robert Guerrero's behalf. Robert Guerrero felt 'disrespected' by the rival gang members. Police escorted Sparkman from the building, and, in the parking lot, Sparkman saw individuals who he believed to be those who shoved Robert Guerrero get into an Expedition.
>
> Sparkman, Guerrero, Kelley, and the Defendant left the Armory in the same car and began traveling Nashville Highway. Sparkman soon identified the Expedition on Nashville Highway, and Robert Guerrero caught up to the Expedition. The Defendant said that, because he knew Sparkman intended to shoot at the Expedition, he warned Sparkman that a vehicle that was traveling behind them might witness his actions. After multiple shots were fired at the Expedition, the Expedition forced the car in which the Defendant, Guerrero, Kelley, and Sparkman traveled off the road and into a ditch. As Sparkman, Kelley, and the Defendant fled the vehicle, the Defendant inquired as to the location of the weapon. Upon learning that Sparkman had left the weapon behind, the Defendant instructed Sparkman to retrieve it because it was evidence that would link them to the crime. When Sparkman continued to flee, the Defendant returned to the scene to find and dispose of the weapon. The Defendant was unable to find the weapon but was able to wipe away gunshot residue on the car seat. When the police arrived, the Defendant allowed them to believe he was a victim of a vehicular assault, and he maintained this story even after the rifle was recovered and he was placed under arrest. In subsequent interviews with detectives, the Defendant acknowledged his involvement when he stated to detectives that, 'he should not be felt sorry for, because ... this is the life that he chose to live. And the fact that he is involved is just a product of that life.'
>
> Based upon this evidence, we find that a jury could find the Defendant, under the theory of criminal responsibility, guilty of first degree murder, felony murder, and attempted first degree murder. The Defendant was not entitled to an acquittal under this evidence and is not entitled to relief as to this issue.

*State v. Guerrero*, 2011 WL 3107722, at *19–20.

This evidence does not suggest that Petitioner was the shooter or that he passed weapons to the shooter. Thus, Petitioner has not shown Mr. Fletcher's testimony to that effect would have been exculpatory. Accordingly, Petitioner has not shown he was prejudiced by any failure of trial counsel to secure the testimony of Mr. Fletcher at his trial.

7

Petitioner argues the Magistrate Judge erred in concluding trial and appellate counsel were not ineffective for failing to challenge the trial court's failure to give a circumstantial evidence jury charge in the concluding instructions. More specifically, Petitioner contends that, even though the trial court gave a circumstantial evidence charge in his preliminary instructions to the jury, he should have repeated the charge in his concluding instructions.

The instruction on circumstantial evidence was given to the jury during the preliminary charge on February 18, 2009 (Doc. No. 23-5, at p. 98-99). The concluding charge was given on February 20, 2009 (Doc. No. 23-9, at p. 62). Petitioner has not cited any authority requiring a circumstantial evidence instruction given in a preliminary charge be repeated in a concluding charge, especially for such a short trial. *See Topper v. Montgomery,* 2019 WL 994963 (C.D. Cal. Jan. 15, 2019) (finding no reversible error in trial court's failure to repeat, in the concluding instructions, a "right to remain silent" charge given in the preliminary instructions). Thus, trial and appellate counsel were not ineffective for failing to raise the issue.

Finally, Petitioner argues the Magistrate Judge erred in concluding trial counsel was not ineffective for failing to challenge the discriminatory selection of the grand jury foreperson under the system in place when Petitioner was indicted. Petitioner relies on *Rose v. Mitchell,* 443 U.S. 545, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979) to support his argument. In *Rose,* the Supreme Court held that racial discrimination in the selection of a grand jury foreperson is a valid ground for setting aside a criminal conviction, but that petitioners had failed to make out a prima facie case of discrimination in the selection of the grand jury foreperson. In reaching its decision, the Court described the selection process in Tennessee at the time the petitioners were indicted in 1972, and the duties of the grand jury foreperson at that time.

Relying, in part, on *Hobby v. United States,* 468 U.S. 339, 104 S. Ct. 3093, 82 L. Ed. 2d 260 (1984), the Magistrate Judge concluded that Petitioner's claim should be denied because he had not shown the duties of the grand jury foreperson was more than ministerial. In *Hobby,* the Supreme Court addressed the issue of whether the selection of grand jury forepersons in the federal system violated due process and equal protection rights. Assuming the petitioner could establish discrimination in the selection of grand jury forepersons, the Court explained, "[t]he ministerial role of the office of federal grand jury foreman is not such a vital one that discrimination in the appointment of an individual to that post significantly invades the distinctive interests of the defendant protected by the Due Process Clause." 468 U.S. at 346. The Court went on to reject the petitioner's equal protection challenge on similar grounds. *Id.,* at 346-49. In reaching its conclusion, the Court distinguished its decision in *Rose v. Mitchell.* In comparing the duties of the grand jury foreperson in Tennessee with the federal counterpart, the *Hobby* Court explained: "The investigative and administrative powers and responsibilities conferred upon the grand jury foreman in Tennessee, who possessed virtual veto power over the indictment process, stand in sharp contrast to the ministerial powers of the federal counterpart. . ." 468 U.S. at 348.[2]

Petitioner argues he is entitled to relief because women, African-Americans, and Hispanics have been systematically excluded from serving as grand jury foreperson in Maury County, Tennessee in the years prior to his indictment in 2008. (Doc. No. 70, at 13-17). Petitioner has not established, however, that grand jury forepersons in 2008 had the same duties they had in 1972 when *Rose* was decided, nor has he otherwise established the nature of the duties *actually*

---

[2] As pointed out by the Tennessee Supreme Court in *State v. Bondurant,* 4 S.W.3d 662, 674-75 (Tenn. 1999), this description of duties in *Hobby* is without citation to authority, and "'surmised that the Tennessee grand jury foreperson had powers greater than those bestowed by statute or exercised *de facto.*'" (quoting *State v. Jefferson,* 769 S.W.2d 875, 877-78 (Tenn. Crim. App. 1988).

exercised by those grand jury forepersons. Indeed, as the Magistrate Judge pointed out, the Tennessee Supreme Court explained in *State v. Bondurant,* 4 S.W.3d at 674-75 that the role of the grand jury foreperson in Tennessee is, in fact, ministerial and administrative. Although Petitioner argues the *Bondurant* Court's description of the duties of the grand jury foreperson in Tennessee is in error, by citing to Tennessee Rule of Criminal Procedure 6(g),[3] he has not established those

---

[3] Rule 6(g) provides:

(g) Appointment, Qualifications, Term, Compensation, Vote, and Duties of Foreperson.

(1) *Appointment of Foreperson.* The judge of the court authorized by law to charge--and receive the report of--the grand jury shall appoint the grand jury foreperson. When concurrent grand juries are impaneled, the court shall appoint a foreperson for each grand jury.

(2) *Qualifications of Foreperson.* The foreperson shall possess all the qualifications of a juror.

(3) *Duration of Appointment.* The foreperson shall hold office and exercise powers for a term of two (2) years from appointment. In the discretion of the presiding judge, the foreperson may be removed, relieved, or excused from office for good cause at any time.

(4) *Duties of Foreperson.* The grand jury foreperson has the following duties:

(A) to assist and cooperate with the district attorney general in ferreting out crime, to the end that the laws may be faithfully enforced;
(B) out of term, to advise the district attorney general about law violations and to furnish names of witnesses, whom the district attorney general may, if he or she deems proper, order summoned to go before the grand jury at the next term;
(C) in term, (in addition to the district attorney general who also has such authority) to order the issuance of subpoenas for grand jury witnesses; and
(D) to vote with the grand jury, which vote counts toward the twelve necessary for the return of an indictment.

(5) *Compensation.* The county legislative body determines the foreperson's compensation, which must not be less than ten dollars ($10.00) per day for each day the foreperson's grand jury is actually in session. The foreperson's compensation may not be diminished during the term of appointment. The foreperson shall receive no other compensation for these services. The foreperson's compensation shall be paid out of the county treasury in the same manner as jurors are paid.

duties rise to the level of that considered problematic by *Rose v. Mitchell* or *United States v. Hobby*. Thus, Petitioner has not shown trial counsel was ineffective for failing to raise such a claim.

In sum, the parties' objections fail to state viable grounds to challenge the conclusions of the Magistrate Judge, or otherwise provide a basis to reject or modify the Report and Recommendation. Having fully considered the objections, the Court concludes they are without merit, and that the Report and Recommendation should be adopted and approved. Accordingly, Petitioner's Motion to Alter or Amend and Grant *Martinez* Hearing (Doc. No. 36) is **GRANTED**, and Petitioner's request for habeas corpus relief is **DENIED**.

This Order shall constitute the final judgment in this case pursuant to Fed. R. Civ. P. 58.

If Petitioner gives timely notice of an appeal from the Court's Order, such notice shall be treated as an application for a certificate of appealability, 28 U.S.C. § 2253(c), which will not issue because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *Castro v. United States*, 310 F.3d 900 (6th Cir. 2002).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE